# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Docket No. 2:19-cr-00059-NT |
| ) | |
| STEPHEN KISSH, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO SUPPRESS**

Defendant Stephen Kissh is charged with one count of knowingly and intentionally possessing fentanyl and cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Before me is the Defendant's motion to suppress all evidence obtained from the search of his person, vehicle, and residence and all statements he made prior to his arrest. (ECF No. 57.) I held a hearing on the Defendant's motion on December 16, 2019. For the reasons set out below, I **DENY** the motion to suppress.

**BACKGROUND**

In October of 2018, Mr. Kissh was charged in State court with one count of aggravated trafficking in scheduled drugs and six counts of possession of scheduled drugs. Mr. Kissh was released on October 12, 2018, after he posted $10,000 in bail. His conditions of release included refraining from using or possessing illegal drugs and submitting to searches of his person, vehicle, and residence at any time without articulable suspicion or probable cause. Amended Bail Bond and Amended Commitment Order with Conditions of Release ("**Conditions of Release Form**"), Gov't's Ex. 1.

On January 2, 2019, Lieutenant Christopher Burbank of the South Berwick Police Department received a call reporting that a woman at Mr. Kissh's residence was under the influence of drugs. The caller expressed concern about the woman's well-being and asked the police to check on her safety because she was recovering from substance use disorder and she had recently relapsed and been hospitalized. The caller identified the woman by name. Lieutenant Burbank knew that Mr. Kissh was subject to bail conditions from his state charges, and he confirmed the content of those conditions through an electronic database search.

At around 8:20 am, Lieutenant Burbank and Police Officer Josh Hartley went to the address identified by the caller and observed Mr. Kissh's trailer and green Dodge Caravan on the property. Lieutenant Burbank knocked on the door of the trailer, and a woman, who was not the woman mentioned by the caller, answered. That woman informed the officers that there were four other people inside the trailer. The officers asked her to step outside. As she did so, Mr. Kissh appeared at the trailer door. Lieutenant Burbank told Mr. Kissh that they were there to do a bail check. When the officers entered the trailer, they saw two men sleeping and another woman—the woman identified by the caller—coming out of the bathroom. Lieutenant Burbank observed that this woman appeared to be under the influence of drugs but did not appear to be in any immediate danger. All persons were asked to step outside, which they did.

Once outside, Lieutenant Burbank asked Mr. Kissh whether he had anything in his pockets, to which Mr. Kissh replied that he did not. After being directed to do

so, Mr. Kissh turned his pockets inside out, and Lieutenant Burbank lifted Mr. Kissh's shirt to check for a weapon. As this occurred, Officer Hartley saw a small green plastic bag fall to the ground from Mr. Kissh's person. He then observed four small baggies on the ground near Mr. Kissh that appeared to contain crack cocaine and heroin. The contents of these bags were subsequently field tested and were presumptively positive for the presence of cocaine and fentanyl.

Lieutenant Burbank directed Officer Hartley to search the trailer and asked Mr. Kissh whether there was anything inside that would violate the bail conditions. Mr. Kissh replied that he was not sure because many people came through the place. Lieutenant Burbank then asked what would be found during the search, and Mr. Kissh replied, "I don't know, probably cocaine." Mr. Kissh also stated that there were safes inside the trailer but explained that they were not his and he did not know the codes. When Mr. Kissh stated that he was cold, Lieutenant Burbank let him sit uncuffed in the back of an unmarked police cruiser, which remained unlocked. Mr. Kissh used his own cell phone to call his lawyer and leave a voicemail. At some point, Mr. Kissh and the four other individuals were permitted to go into Mr. Kissh's mother's house, where Mr. Kissh fell asleep.

During the search of the trailer, officers discovered a plastic bag that contained approximately 26 grams of suspected cocaine, drug paraphernalia,[1] and two locked

---

[1] According to the United States, officers recovered items including, but not limited to: suspected crack pipes and a hypodermic needle; a false top Sprite can of the type commonly used to conceal controlled substances; quantities of suspected cocaine base and powder cocaine; two BB guns; multiple prescription drugs; baking soda; two scales with residue; cut straws of the type commonly used to snort controlled substances; quantities of unidentified white powders; multiple small baggies; a bottle of brandy; marijuana; and marijuana paraphernalia, including pipes, a grinder, and a bong.

3

safes nearby. The officers also searched Mr. Kissh's Dodge Caravan, in which they found a small green baggie and two razor blades. Following the discovery of these items, Mr. Kissh was placed under arrest, and officers seized Mr. Kissh's cell phone and the two safes. Two days later, a State judge issued search warrants authorizing searches of the phone and safes. From the safes, the officers recovered quantities of fentanyl and cocaine, various prescription pills, 45 tabs of suspected LSD, edible marijuana products and marijuana distillates, approximately $2,458.00 in cash, drug paraphernalia, and a wallet containing identification with Mr. Kissh's name. They also recovered digital evidence from the cell phone.

The Defendant was charged with one count of knowingly and intentionally possessing fentanyl and cocaine with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). The Defendant filed this motion to suppress all evidence seized from the search of his person, vehicle, and residence and any statements he made during the incident.

**LEGAL STANDARD**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. A "warrantless police entry into a residence is presumptively unreasonable unless it falls within the compass of one of a few well-delineated exceptions to the Fourth Amendment's warrant requirement." *Matalon v. Hynnes*, 806 F.3d 627, 633 (1st Cir. 2015) (internal quotations omitted). One such exception encompasses searches conducted with consent. *See United States v. Jones*, 523 F.3d

31, 37 (1st Cir. 2008). When consent is used to circumvent the warrant requirement, the Government bears the burden of proving "valid, voluntary consent" by a preponderance of the evidence. *Pagán-González v. Moreno*, 919 F.3d 582, 591 (1st Cir. 2019); *United States v. Vázquez*, 724 F.3d 15, 18 (1st Cir. 2013); *see also Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[W]here the validity of a search rests on consent, the State has the burden of proving that the necessary consent was obtained and that it was freely and voluntarily given, a burden that is not satisfied by showing a mere submission to a claim of lawful authority.").

## DISCUSSION

### I. Bail Conditions

As noted, as part of his bail conditions, Mr. Kissh agreed not to use or possess alcohol or to use or possess any illegal drugs or their derivatives. He further agreed to "submit to searches of [his] person, vehicle, and residence . . . at any time without articulable suspicion or probable cause."[2] Amended Bail Bond and Conditions of Release Form, Gov't's Ex. 1.

---

[2] Maine law permits the setting of such bail conditions when a "judicial officer determines that the release . . . will not reasonably ensure the appearance of the defendant at the time and place required, will not reasonably ensure that the defendant will refrain from any new criminal conduct, will not reasonably ensure the integrity of the judicial process or will not reasonably ensure the safety of others in the community." 15 M.R.S.A. § 1026(3). In making that determination, the judicial officer shall consider "[t]he nature and circumstances of the crime charged," "[t]he nature of the evidence against the defendant," and "[t]he history and characteristics of the defendant." *Id.* § 1026(4). The statute outlines several available conditions, including that the defendant "[s]ubmit to [a] random search for possession or use" of a firearm, alcohol, or illegal drugs. *Id.* § 1026(3)(A)(9)–(9-A). Imposing a condition involving the possession or use of alcohol and illegal drugs requires a "presentation to the judicial officer of specific facts demonstrating the need for such condition." *Id.* § 1026(3)(A)(9).

The Government can meet its burden of establishing consent to a search by pointing to bail conditions—agreed to by the Defendant—that permit such a search. *See United States v. Gates*, No. 08-cr-42-P-H, 2008 WL 5382285, at *7 (D. Me. Dec. 19, 2008) (rec. dec., *aff'd* Feb. 12, 2009), *aff'd*, 709 F.3d 58 (1st Cir. 2013). Once the Government does so, the burden shifts to the Defendant to show that his bail conditions were unreasonable under the circumstances or that he did not fully understand them. *See id.* (citing *State v. Ullring*, 741 A.2d 1065, 1073 (Me. 1999)). District courts in this circuit have held that bail conditions like Mr. Kissh's are valid. *See United States v. James*, No. 2:17-cr-156-GZS, 2018 WL 2027084, at *6 (D. Me. May 1, 2018) (seeing "no reason why the plain language of the bail condition allowing for suspicionless searches of Defendant's residence should not be given its full force and effect"); *United States v. Drane*, No. 13-cr-31-JL, 2014 WL 2940857, at *9 (D.N.H. June 30, 2014) (finding that search would have been legal even without reasonable suspicion because defendant's bail conditions included submission to searches without articulable suspicion or probable cause). For its part, the First Circuit has "see[n] no reason why [it] should not give the plain language of such a bail condition force and effect."[3] *United States v. Gates*, 709 F.3d 58, 64 (1st Cir. 2013) (finding that

---

[3] The Defendant cites *United States v. Scott* in arguing that the bail conditions alone did not authorize the search. 450 F.3d 863 (9th Cir. 2006). In that case, the Ninth Circuit held that a warrantless drug test was unlawful because the Government relied solely on the defendant's bail conditions, which authorized "random" drug testing and warrantless searches of the defendant's house "by any peace officer anytime[,] day or night." *Id.* at 865. The court's ruling was narrow and closely tied to the particular facts of that case. The holding was not that "the government can *never* justify drug-testing as a condition of pretrial release." *Id.* at 872 n.12 (emphasis in original). Rather, the court stated that "[s]uch a condition may well be justified based on a legislative finding . . . or an individualized finding that defendant's ability to appear in court will be impaired absent drug-testing." *Id.* The Government had conceded in *Scott* that the conditions "were merely checked off by a judge from a standard list of pretrial release conditions." *Id.* at 865 (internal quotations omitted). No such

search was independently justified by bail conditions, though ultimately holding that defendant had consented to the search).

At the hearing, the Defendant did not argue that his consent was coerced or improperly obtained. Rather, he argued that the Government had failed to meet its burden of establishing valid consent. Specifically, the Defendant contended that the Amended Bail Bond is a separate document from the Conditions of Release Form. The Amended Bail Bond does not list the conditions of release specific to the Defendant, and the Defendant argues that the Government cannot establish his consent to the conditions without showing that he signed the Conditions of Release form or was otherwise instructed on its terms. There is no place for Mr. Kissh's signature on the Conditions of Release form.

However, Mr. Kissh's signature does appear on the Amended Bail Bond, which contains a line stating, "As a condition of my release, I shall comply with any condition(s) set forth on the Conditions of Release form." The box next to that line is checked. In addition, the Amended Bail Bond is signed by a clerk and dated November 29, 2018,[4] under a line that reads "I have explained the defendant's . . . obligations

---

concession exists in this case, and the Maine Bail Code specifically requires the judicial officer to make an individualized determination. *See* 15 M.R.S.A. §§ 1026(2-A)–(4) (requiring the judicial officer to consider several individualized factors when setting bail conditions, including the "nature and circumstances of the crime charged," the "nature of the evidence against the defendant," and several additional factors related to the "history and characteristics of the defendant"); *United States v. Gauthier*, No. 2:10-cr-35-P-S, 2010 WL 3488665, at *4 (D. Me. Aug. 30, 2010), *report and recommendation adopted*, 2010 WL 3927312 (D. Me. Oct. 5, 2010) ("[T]he Maine Bail Code certainly expects such individualized determinations to be made in every case before the chemical testing condition is imposed. Without more, that should be sufficient for this court.").

[4] At the hearing, Lieutenant Burbank testified that, when he electronically looked up Mr. Kissh's bail conditions, the date associated with those conditions was October 12, 2018. The Amended Bail Bond and the Conditions of Release form indicate that Mr. Kissh posted his bail on October 12, 2018, but the Amended Bail Bond and the Conditions of Release form were both executed on November

under this bond on this date and will give a copy of this form to the defendant . . . immediately after signing it." Finally, the Conditions of Release form, which is signed by a judge and also dated November 29, 2018, contains the bolded instruction: "This Conditions of Release form to be attached to defendant's Bail Bond."[5]

The Defendant has given no serious reason to question the validity of his consent to the bail conditions, particularly when his subsequent actions indicated that he understood the conditions.[6] For these reasons, I find that the Government has proved by a preponderance of the evidence that Mr. Kissh consented to the bail conditions authorizing the searches, and thus the evidence seized should not be suppressed.

## II. Statements Made by Mr. Kissh Prior to Arrest

Mr. Kissh also argues that he was in custody when he was interrogated outside of his residence and that he was not read his *Miranda* rights. He contends that "all

---

29, 2018. I find this discrepancy in dates to be irrelevant, as the electronic entry likely dated back to the bail posting date.

[5] The Maine Bail Code also requires that the judicial officer provide the defendant with a written statement of the conditions of release. *See* 15 M.R.S. § 1026(5)(A); *State v. LeBlanc-Simpson*, 190 A.3d 1015, 1015 (Me. 2018). In *LeBlanc-Simpson*, the Law Court held that the State had failed to meet its burden of proving that the defendant had been given adequate notice of his conditions of release. 190 A.3d at 1019. As in this case, the defendant did not directly sign the conditions of release form. *Id.* at 1018. However, *LeBlanc-Simpson* is distinguishable from this one. First, the defendant in that case had been charged with violating the conditions, and thus the State had to prove the element of notice beyond a reasonable doubt. In contrast, the Government must only meet a preponderance of the evidence standard to prove consent to a search. *See United States v. Vázquez*, 724 F.3d 15, 18 (1st Cir. 2013). Second, the Law Court noted that evidence of a defendant's knowledge of conditions of release could include "a form signed by the defendant signifying knowledge of the conditions." *LeBlanc-Simpson*, 190 A.3d at 1019. Because LeBlanc-Simpson did not post his required bail, he remained in jail and never signed a bail bond. *Id.* at 1016. In contrast, Mr. Kissh did sign a bail bond, in which he acknowledged that he "under[stood] all [his] obligations under this bond" and agreed to "comply with any condition(s) set forth on the Conditions of Release form."

[6] Lieutenant Burbank testified that he explained to Mr. Kissh that officers were there for a bail check. Mr. Kissh reportedly stated that he understood and was aware of the conditions.

8

statements [made] subsequent to him being directed to exit his residence should be suppressed." The Government counters that the statements made by Mr. Kissh were voluntary and that Mr. Kissh was not in custody when he made them.

"[A] person questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way must first" be given *Miranda* warnings. *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (internal quotations omitted). The First Circuit has identified "four factors that, among others, may inform a determination of whether, short of actual arrest, an individual is in custody" for purposes of *Miranda*: "whether the suspect was questioned in familiar or at least neutral surroundings, the number of law enforcement officers present at the scene, the degree of physical restraint placed upon the suspect, and the duration and character of the interrogation." *United States v. Hughes*, 640 F.3d 428, 435 (1st Cir. 2011) (internal quotations omitted). The determination of whether custody exists ultimately "depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* (internal quotations omitted).

Mr. Kissh was primarily questioned in the familiar surroundings directly outside of his trailer.[7] At most, there were three officers on the scene, though only

---

[7] Lieutenant Burbank also asked Mr. Kissh to provide the codes for the safes while Mr. Kissh was sitting in the unmarked cruiser. However, Mr. Kissh went into the cruiser voluntarily to warm up, and his only statement there was that he did not know the codes. He later freely went into his mother's house and fell asleep.

9

Lieutenant Burbank questioned Mr. Kissh.[8] That number is not "overwhelming." *See United States v. Infante*, 701 F.3d 386, 397 (1st Cir. 2012) (finding no custody where there were two officers in the room, joined briefly by two others); *Hughes*, 640 F.3d at 436 (finding no custody where two officers participated in the questioning); *see also United States v. Murdock*, 699 F.3d 665, 669–70 (1st Cir. 2012) (finding no custody where five officers "were present, with one or two keeping an eye on [the defendant] most of the time and the others searching the premises"). Mr. Kissh was never physically restrained prior to his arrest, and though officers never told Mr. Kissh that he was free to leave the scene, they also never told him he was required to remain.

Finally, in terms of the duration and character of the questioning, the record indicates that Lieutenant Burbank only asked Mr. Kissh a few questions. Although the searches lasted approximately three hours, the actual questioning was very brief, and Mr. Kissh spent a portion of the morning asleep in his mother's house. Courts have declined to find custody in cases with much longer interviews. *See Hughes*, 640 F.3d at 437 (90-minute interview considered "relatively short"); *United States v. O'Neal*, No. 1:18-cr-00020-JDL, 2018 WL 5023336, at *3 (D. Me. Oct. 16, 2018) (2.5-hour interview non-custodial). Moreover, there is no evidence that the officers were confrontational, raised their voices, or unholstered their weapons. *See United States v. Campbell*, 741 F.3d 251, 267 (1st Cir. 2013) (finding no custody where "officers on the scene made no show of force by using their weapons"); *O'Neal*, 2018 WL 5023336,

---

[8] At some point before the trailer was searched, School Resource Officer Upton arrived. He assisted Officer Hartley with the search of the trailer, under the direction of Lieutenant Burbank, and there was no evidence presented that he questioned Mr. Kissh.

at *3 (finding no custody where "[n]one of the agents raised their voices, 'badgered [O'Neal] for answers, or menaced him in any way' ").

Based on these facts, I conclude that Mr. Kissh was not in custody during the questioning, and thus the officers' failure to inform Mr. Kissh of his rights under *Miranda* does not warrant suppression of his statements.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Defendant's Motion to Suppress.[9]

SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 7th day of January, 2020.

---

[9] The Defendant also seeks suppression of evidence obtained from the searches of the safes and his cell phone, arguing that the warrants authorizing those searches were based on information obtained in violation of his constitutional rights. Because I find that the officers did not violate Mr. Kissh's constitutional rights, I deny the suppression of this evidence as well.