## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Docket No. 2:19-cr-00059-NT-1 |
| | ) |
| STEPHEN KISSH, | ) |
| | ) |
| Defendant. | ) |

### AMENDED ORDER ON MOTION FOR COMPASSIONATE RELEASE

Pending before me is the Defendant's renewed motion for compassionate release ("**Def.'s Renewed Mot.**") (ECF No. 129), to which the Government has responded (ECF No. 138). For the reasons that follow, the Defendant's renewed motion for compassionate release (ECF No. 129) is **GRANTED**.

### PROCEDURAL BACKGROUND

On January 27, 2020, the Defendant, Stephen Kissh, pleaded guilty to knowingly and intentionally possessing with the intent to distribute fentanyl and cocaine, in violation of 21 U.S.C. § 841(a)(1). Presentence Investigation Report (**"PSR"**) ¶¶ 1, 5 (ECF No. 103-3). On August 3, 2020, I sentenced Mr. Kissh to thirty-six months imprisonment as well as three years of supervised release. Judgment (ECF No. 99). Mr. Kissh received credit for time he spent in pretrial detention (he first entered federal custody on January 22, 2019), PSR ¶ 1, and, with good-time deductions, his projected release date is now October 25, 2021. Find an inmate, *Stephen Kissh*, www.bop.gov/inmateloc/ (last visited Jan. 11, 2021). Mr. Kissh is currently incarcerated at Devens Federal Medical Center ("**FMC Devens**").

As I outlined in my prior order, Mr. Kissh has repeatedly requested compassionate release. Dec. 23, 2020, Order on Mot. for Compassionate Release ("**Dec. Order**") 2–3 (ECF No. 128). I denied Mr. Kissh's most recent motion because he had not formulated an acceptable release plan. Dec. Order 5–7. However, I noted that "I remain[ed] concerned about Mr. Kissh's safety while incarcerated" and stated that I was "open to reconsidering whether compassionate release is warranted" should Mr. Kissh propose a release plan approved by the Probation Office. Dec. Order 7.

Mr. Kissh now has put forward a new release plan that the Probation Office has approved. Def.'s Renewed Mot. 1, 3–4. The Government continues to oppose Mr. Kissh's release. Gov't's Obj. to Stephen Kissh's Emergency Mot. to Reopen Denial of Compassionate Release ("**Gov't's Second Opp'n**") (ECF No. 138).[1]

## ANALYSIS

Congress enacted the compassionate release statute[2] to allow district courts to modify sentences of imprisonment, as relevant here, upon finding that:

---

[1]    The Government has acknowledged that Mr. Kissh has exhausted his administrative remedies. Dec. 23, 2020, Order on Mot. for Compassionate Release 3.

[2]    Title 18, United States Code, Section 3582(c)(1)(A) governs "[m]odification of an imposed term of imprisonment." Prior to the passage of the First Step Act of 2018, only the Director of the Bureau of Prisons ("**BOP**") could move for modification of a sentence. *See United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020). In December of 2018, Congress amended § 3582(c) to allow inmates to seek a modification of an imposed term of imprisonment from the courts directly. *See* First Step Act of 2018, Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5239 (codified at 18 U.S.C. § 3582(c)(1)(A)). Section 3582 now provides that:

> The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the

(1) extraordinary and compelling reasons warrant modification, (2) the modification accords with the sentencing factors found at 18 U.S.C. § 3553(a), and (3) the modification is consistent with "applicable policy statements" of the Sentencing Guidelines. 18 U.S.C. § 3582(c). I address each part of the analysis in turn.

## I.   Extraordinary and Compelling Circumstances

The Government concedes that "in light of the ongoing COVID-19 pandemic, some of the defendant's health conditions constitute extraordinary and compelling reasons warranting his release . . . ." Gov't's Obj. to Def.'s Emregency [sic] Mot. for Compassionate Release ("**Gov't's First Opp'n**") 1 (ECF No. 126).[3] I agree. Mr. Kissh is a 54-year-old man with multiple chronic health conditions, including a documented history of cirrhosis, anemia, asthma, edema of both legs, reflux disease, upper gastrointestinal bleeding, liver disease, an enlarged spleen, and back and neck issues resulting from a motor vehicle accident in May 2019. PSR ¶¶ 40–43. Over the last few months, there have been a few additional adverse developments in Mr. Kissh's health. Shortly after being sentenced, Mr. Kissh was hospitalized due to "severe pain" around his liver and soreness around his spleen, Aug. 10, 2020, Mass. Gen. Hosp.

---

warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c).

[3]     Mr. Kissh has recently tested positive for SARS-CoV-2, and the Government contends that this positive diagnosis would make Mr. Kissh more dangerous to the community if released.  Because, as discussed below, I do not intend for Mr. Kissh to be released until he is no longer contagious, this issue is moot.

Med. Records (ECF No. 110-2), and he has been provisionally diagnosed with COPD (chronic obstructive pulmonary disease), in addition to his asthma, Oct. 14, 2020, Bureau of Prisons Health Servs. Clinical Encounter – Admin. Note (ECF No. 110-3).

As of January 11, 2021, FMC Devens is reporting that there are 319 inmates and twenty-one staff testing positive for SARS-CoV-2, the virus that causes COVID-19, and Mr. Kissh is among that number.[4] Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Jan. 11, 2021). Reported infections at FMC Devens have skyrocketed in a matter of weeks. As recently as December 11, the facility was reporting no positive cases. Gov't's First Opp'n 2. Six days later, that number rose to fifty-four inmate infections. Def. Stephen Kissh's Emergency Mot. for Compassionate Release 3 (ECF No. 124). The numbers have continued their stratospheric climb over the last three weeks. That 319 inmates are currently infected is particularly striking in light of the fact that the population of FMC Devens is 742 inmates. *See* FMC Devens, www.bop.gov/locations/institutions/dev/ (last visited Jan. 11, 2021). That means that approximately forty-three percent of the inmate population at the facility is currently infected with SARS-CoV-2.

The Government describes the extensive efforts undertaken by the Bureau of Prisons ("**BOP**") to prevent and contain the spread of SARS-CoV-2 within the walls of the federal prison system. Gov't's First Opp'n 3–6. While the BOP may well be

---

[4]     Devens Federal Medical Center also reports that forty-eight inmates and thirty-five staff have recovered from COVID-19 and that six inmates have died from the virus. Bureau of Prisons, COVID-19 Inmate Test Information, https://www.bop.gov/coronavirus/ (last visited Jan. 11, 2021).

doing everything within its power to combat the spread of SARS-CoV-2 at FMC Devens, it is apparent that these efforts are insufficient under the circumstances. The relevance of the spiking infections at FMC Devens is no longer that Mr. Kissh is at risk of being infected with SARS-CoV-2. That horse has left the barn. Mr. Kissh now faces different risks.[5] Even in a normal prison environment, Mr. Kissh's uniquely poor health is cause for great concern. While FMC Devens has long been known as an excellent medical center, the recent spike in cases now raises serious questions about the facility's ability to monitor and care for someone as sick as Mr. Kissh.[6]

---

[5]    In a supplemental submission, defense counsel argues that Mr. Kissh should be released because of the risks of reinfection. Stephen Kissh's Suppl. to Mot. to Reopen Compassionate Release 3–6 (ECF No. 135) (citing cases allowing compassionate release after inmates have already contracted the virus). The Government cites cases going the other way. *See* Gov't's Obj. to Stephen Kissh's Emergency Mot. to Reopen Denial of Compassionate Release ("**Gov't's Second Opp'n**") 4–5 (ECF No. 138). Because the Government concedes the existence of extraordinary circumstances, I need not get into these issues, other than to note that the risk of reinfection seems fairly low. It is the risk of further complications and the prospect that Mr. Kissh's other serious medical conditions will not be adequately monitored and treated that now concerns me most.

[6]    Defense counsel has only been able to speak with Mr. Kissh once in the last month despite repeated requests. Mot. for Telephonic Conference 1 (ECF No. 131). Although Mr. Kissh frequently wrote directly to me throughout the fall, I have received no information from Mr. Kissh about his condition or treatment in almost a month. In a telephone conference with counsel on January 6, 2021, defense counsel represented that he received a letter from FMC Devens indicating that the facility would not be able to arrange a phone call with Mr. Kissh because FMC Devens is under an institutional quarantine. At the January 6th telephone conference, I asked the Government to get an update from FMC Devens as to how Mr. Kissh was doing. I also requested that the Government assist defense counsel in getting a telephone call through to Mr. Kissh.

    The Government has not been able to provide much information. It has indicated that it has received medical records (which were not provided to me) that indicate that Mr. Kissh was asymptomatic as of January 6th. *See* Gov't's Second Opp'n 2. The Government has not provided information about the current conditions at FMC Devens, either in terms of how positive inmates are being monitored and cared for or in terms of the facility's capacity to handle the preexisting medical conditions of inmates. The Government was also apparently unsuccessful in arranging a telephone call between Mr. Kissh and his counsel.

    I have no doubt that the staff at FMC Devens are busy. But given this lack of information, the Government's claim that Mr. Kissh will be better cared for at FMC Devens than he would be if released is unsupported. I recognize that Mr. Kissh bears the burden of proving that he is entitled to compassionate release, but the information about what FMC Devens is doing to manage the care of its inmates is exclusively within the control of the Government. Because the BOP has not allowed phone contact, Mr. Kissh is not able to provide updates about his medical conditions and his level of care. I construe this information gap in Mr. Kissh's favor. *Cf. Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591

Because I find that Mr. Kissh has established extraordinary and compelling reasons for a modification of his sentence, I go on to consider the § 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A).

## II.     Applicable § 3553(a) Factors

When I first sentenced Mr. Kissh, I considered the § 3553(a) factors and determined that a term of imprisonment of thirty-six months was sufficient but not greater than necessary to achieve the purposes of sentencing. That sentence, in my view, reflected the seriousness of the offense, promoted respect for the law, provided just punishment, afforded adequate deterrence, and served to protect the public.

There have been two material changes since I imposed that sentence, both of which affect the need for the sentence to provide just punishment. The first is that Mr. Kissh's place of incarceration is now a much more dangerous environment. FMC Devens is a very different place given its high proportion of inmates infected with SARS-CoV-2. Mr. Kissh's health is extraordinarily poor even in the best of circumstances, and I have serious concerns about the ability of FMC Devens to manage his health conditions. The second change is the passage of time. When considering good-time deductions, Mr. Kissh has now served over two-thirds of his sentence and is scheduled to be released in October.

I appreciate the Government's concerns that Mr. Kissh poses a danger to himself and to the community upon release. I have previously recognized these same

---

F.3d 1, 20 (1st Cir. 2009) ("[A]n adverse inference instruction may be allowed when a party fails to produce a document that exists or should exist and is within its control.").

dangers, *see* May 6, 2020, Order on Def.'s Mot. for Post-Conviction Bail 5–6, and I continue to have concerns that upon release, Mr. Kissh might continue to abuse drugs and alcohol and could endanger himself and others, just as he did when he was released on conditions while charges were pending in state court and again after being charged in federal court. People who distribute controlled substances pose a danger to the community, but this case did not involve aggravating factors, such as possession of a firearm or any act of violence. The primary danger posed by Mr. Kissh is that he will return to drugs and that he will continue to deal drugs.

Mr. Kissh has proposed a new release plan that the Probation Office has approved, and this is a release plan that will significantly mitigate the danger to the community during the course of the three years that he will remain on supervised release. As detailed below, I am requiring that he live at a sober living residence, that he be frequently tested for controlled substances and other intoxicants, that he be required to wear a remote alcohol testing device, and that he not be permitted to return to his mother's property, where he has previously engaged in drug activity. Should Mr. Kissh violate his conditions of supervised release, I have asked the Probation Office to notify me immediately, and I will be able to take corrective action up to and including revoking his supervised release and returning him to prison. *See* 28 U.S.C. § 3583(e)(3). And the fact of the matter is that Mr. Kissh will be released by October even if I were to deny this motion for compassionate release.

In light of the above, I conclude that Mr. Kissh's release under additional conditions accords with the § 3553(a) factors.

7

### III.   Consistency with Applicable Policy Statements by the Sentencing Commission

The United States Sentencing Commission's policy statement on compassionate release is found at § 1B1.13 of the sentencing guidelines. But the Sentencing Commission has not yet revised § 1B1.13 in light of the intent of the First Step Act of 2018 (the "**First Step Act**") to expand the use of the compassionate release statute. *See United States v. Brooker*, 976 F.3d 228, 233–234 (2d Cir. 2020). This is because the Sentencing Commission has not had a quorum since the second quarter of fiscal year 2019. U.S. Sentencing Comm'n, *Annual Report* 2–3, 2018, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publicatio ns/annual-reports-and-sourcebooks/2018/2018-Annual-Report.pdf.   Because the compassionate release statute only directs courts to consider "*applicable* policy statements issued by the Sentencing Commission,"   18 U.S.C. § 3582(c)(1)(A) (emphasis added), I need only consider § 1B1.13 if it is in fact "applicable" to a compassionate release motion filed by a prisoner rather than by the BOP, *see United States v. Jones*, 980 F.3d 1098, 1107–08 (6th Cir. 2020).[7] As I have previously found, "§ 1B1.13 is not an 'applicable' policy statement, particularly since it does not reflect the Sentencing Commission's views in light of the passage of the First Step Act." *United States v. Millette*, Docket No. 2:16-cr-00004-NT, 2020 WL 7502454, at *6 (D. Me. Dec. 21, 2020). And while § 1B1.13 continues to "provide[] helpful guidance," the guidance that it offers in this context is somewhat limited, given the analysis already

---

[7]      Section 1B1.13 is "[t]he only policy statement that possibly could be 'applicable' " to Mr. Kissh's compassionate release motion. *See United States v. McCoy*, 981 F.3d 271, 282 (4th Cir. 2020).

required by § 3582(c) and given the Government's concession that there exist extraordinary and compelling reasons in this case. *See id.*

## IV.    Plan for Release

Finally, I must consider the acceptability of Mr. Kissh's release plan. He intends to reside at Myrtle Street Sober Living Program (**"Myrtle Street"**) in Portland, Maine. Def.'s Renewed Mot. 3. The Government expresses concerns about this plan, particularly about Mr. Kissh's ability to receive medical care at Myrtle Street, the level of supervision he would be under, and his ability to pay for his stay. Gov't's Second Opp'n 6–11. After consultation with the Probation Office, I do not find these concerns to be significant enough to deny the Defendant's motion for release. Mr. Kissh will be closely supervised by the Probation Office, he will be living one mile from Maine Medical Center, and he will likely receive disability benefits, which apparently allowed him to pay for his last stay at Myrtle Street. The risks associated with his release can be mitigated through conditions of supervised release.

## CONCLUSION

For the foregoing reasons, the Defendant's motion for compassionate release (ECF No. 129) is **GRANTED**, and the Defendant's Motion to Amend is **DENIED AS MOOT** (ECF No. 140). The Defendant is **ORDERED** released within twenty-four hours of the completion of any quarantine and testing protocols required by the BOP for inmates who are currently infected with SARS-CoV-2.[8] The Defendant's sentence

---

[8]     My understanding is that the BOP will not release an inmate who has tested positive for SARS-CoV-2 until he or she is no longer contagious as evidenced by a negative test.

9

is reduced to time served, plus the completion of this quarantine period. Upon release from custody, the Defendant will complete the remainder of his sentence as outlined in the original Judgment of this Court on August 3, 2020 (ECF No. 99). In accordance with 18 U.S.C. § 3583(e), I am also modifying Mr. Kissh's supervised release conditions to include the following additional terms:

- The defendant shall reside in a sober living residence as directed by his supervising officer.

- In addition to any other requirements, the defendant shall submit to testing with a remote alcohol monitoring device that measures breath alcohol content for a period not to exceed 90 days; not to exceed 5 tests per day. The defendant shall pay/co-pay for services, directly to the monitoring company, to the supervising officer's satisfaction. The defendant shall not obstruct or tamper, or try to obstruct or tamper, in any way, with any tests. During the remote alcohol testing period, the Court authorizes a search of the defendant's geographic location and movements by the probation office via the program's equipment.

- The defendant is prohibited from returning to the property located at 37 Witchtrot Road, including in the associated camper, in South Berwick, Maine, without obtaining prior approval from his supervising officer.


SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated: January 12, 2021